Hearing Date and Time: February 25, 2014 at 11:00 a.m. (ET)
Response Deadline: February 18, 2014 at 4:00 p.m. (ET)

SCHIFF HARDIN LLP
666 Fifth Avenue, 17th Floor
New York, NY 10103
Telephone: 212.753.5000
Facsimile: 212.753.5044
Louis T. DeLucia
Alyson M. Fiedler
Email: ldelucia@schiffhardin.com
afiedler@schiffhardin.com

*Counsel for the Debtor, China Natural Gas, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>CHINA NATURAL GAS, INC.,<br><br>Debtor. | Chapter 11<br><br>Case No.: 13-10419 (SHL) |

**MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR ENTRY
OF AN ORDER FURTHER EXTENDING ITS EXCLUSIVE PERIODS TO FILE
A CHAPTER 11 PLAN AND SOLICIT ACCEPTANCES THEREOF**

TO THE HONORABLE JAMES M. PECK,
UNITED STATES BANKRUPTCY JUDGE:

China Natural Gas, Inc., as debtor and debtor in possession (the "Debtor" or "CHNG"), respectfully represents as follows:

**Background**

1. On or about February 8, 2013 ("Petition Date"), three alleged creditors, Abax Lotus Ltd. and its affiliated entity, Abax Nai Xin A Ltd. (collectively, the "Abax Entities"), along with Lake Street Fund LP (together with the Abax Entities, the "Petitioners") filed an involuntary petition as and against CHNG in the United States Bankruptcy Court for the Southern District of New York.

2. On June 5, 2013 and June 6, 2013, the Southern District of New York entered Final Judgments against CHNG and CHNG's chairman and former CEO, Qinan Ji, in an action commenced by the SEC on May 14, 2012 (the "SEC Action"). *Securities and Exchange Commission v. China Natural Gas, Inc., et al.*, No. 12-cv-3824. [Dkt. Nos. 13, 14.]

3. On June 26, 2013, CHNG filed its Consent to Entry of an Order for Relief, pursuant to Local Rule 1007-2 [D.I. No. 35], and thereafter, on July 9, 2013, the Court entered an Order for Relief [D.I. No. 38].

4. On July 15, 2013, the Debtor filed a motion seeking this Court's approval of the settlement of the SEC Action, which was granted by Order dated August 8, 2013. [Dkt. Nos. 42 and 62].

5. On or about October 11, 2013, the Debtor filed a motion to set January 6, 2014 as the deadline to file Proofs of Claim (the "Bar Date Motion"). The Court entered an Order granting the Bar Date Motion on November 25, 2013. [Dkt. No. 104].

6. On or about October 23, 2013, the Court entered an Order approving the Debtor's application to employ Warren Street Global, Inc. and designate J. Gregg Pritchard as chief restructuring officer (the "CRO"). [Dkt. No. 87].

7. On or about October 18, 2013, the Debtor filed a motion seeking its first extension of its Exclusive Period (as defined herein), and on November 20, 2013, the Court granted the extension, and entered an Order extending the Debtor's Exclusive Period to and through February 4, 2014. [Dkt. No. 102].

8. Thereafter, and at the encouragement and direction of the Court, the Debtor and its largest alleged creditor, the Abax Entities, entered into and filed a Protocol Agreement [Dkt. No. 109], pursuant to which the parties agreed to collaborate to explore the

interests of any third parties in a restructuring transaction, sharing expressions of interest, creating a "Working Group" (comprised of the Debtor's and Abax Entities' representatives) that would meet or confer every week on developments and possible interested parties in a restructuring transaction. In furtherance, the Debtor has retained (subject to Court approval) Ernst & Young (China) Advisory Limited ("E&Y China") as restructuring/financial advisors, with the prior knowledge and involvement of the Abax Entities.

9. Although the Debtor is working to attract and identify interested parties willing to either invest in the Debtor or to acquire assets of the Debtor (or the assets of the VIE entity (and its subsidiaries)) in the People's Republic of China ("PRC"), and has shared the identity of at least three (3) such parties with the Abax Entities, the Debtor and its advisors (including E&Y China) require additional time (and, therefore, an extension of its Exclusive Period) to negotiate, document and file any acceptable transaction (all of which will be done with the participation of the Abax Entities and stakeholders in the Debtor's estate).

### Jurisdiction

10. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

11. Following entry of the Order for Relief, the Debtor has been operating as a debtor-in-possession, in possession and control of its business and assets pursuant to 11 U.S.C. §§ 1107 and 1108. To date, an official committee of unsecured creditors has not been appointed.

### Summary of Requested Relief

12. The Debtor hereby moves the Court (the "Motion"), pursuant to section 1121(d) of the Bankruptcy Code, for an Order: (a) further extending the period during which the Debtor has the exclusive right to file a Chapter 11 plan or plans (the "Exclusive Filing Period")

by an additional ninety (90) days, through and including May 5, 2014; and (b) extending the period during which the Debtor has the exclusive right to solicit acceptances thereof (the "Exclusive Solicitation Period" and, together with the Exclusive Filing Period, the "Exclusive Periods") through and including July 7, 2014, or approximately sixty (60) days after the expiration of the Exclusive Filing Period, as extended.

*The Debtor's Restructuring Efforts*

13. The Debtor is focused on implementing a restructuring that maximizes value for all stakeholders. To that end, since the Petition Date, the Debtor has taken a number of critical steps to promote its restructuring, including, among other things, (i) seeking and obtaining court approval of a critical SEC settlement of pre-bankruptcy alleged securities violations; (ii) identifying and retaining the CRO; (iii) engaging E&Y China (subject to Court approval) to identify potential interested parties in an investment in the Debtor or the acquisition of its assets (here and in the PRC); (iv) actively working with its principal creditors pursuant to the Protocol Agreement and the Working Group to further discussions with such parties; and (v) participating in discussions and exchanging debt repayment proposals with its principal creditors.

14. In addition, the Debtor has worked with its attorneys defending certain security class actions, Shearman & Sterling LLP, to bring those matters to a conclusion that will facilitate any restructuring, and/or will address the potential treatment of such claimants under a plan.[2]

15. Because the outcomes of these restructuring efforts are predicates to any Chapter 11 Plan, additional time is needed to formulate a Chapter 11 Plan. Currently, the

---

[2] The securities class actions are pending in the United States District Court for the District of Delaware and the Delaware Chancery Court, Case No. 10-728 (RGA) and Case No. 7559 (VCL) [See Declaration of Adam Strochak, Dkt. No. 20, Exs. Q and R.]

Exclusive Filing Period expires on February 4, 2014, and the Exclusive Solicitation Period expires on April 7, 2014. Unfortunately, the present February 4, 2014 expiration of the Debtor's Exclusive Filing Period falls almost immediately after the commencement of the Chinese New Year (a national traditional holiday in the PRC that began this year on January 31 and will end approximately seven (7) days thereafter), during which period it will be difficult, if not impossible to make progress with potentially interested investors/purchasers located largely in the PRC. Accordingly, the Debtor respectfully submits that an extension of the Exclusive Periods as requested herein is necessary and appropriate to allow it to complete its efforts to negotiate with key constituents and develop and seek confirmation of a Chapter 11 Plan.

### Request for Extension of Exclusive Periods and Grounds for Relief

16. Pursuant to section 1121(b) of the Bankruptcy Code, a debtor has the exclusive right to file a plan of reorganization during the first one hundred twenty (120) days after the commencement of a Chapter 11 case. If a debtor files a plan during this exclusive filing period, section 1121(c)(3) of the Bankruptcy Code grants an additional sixty (60) days during which the debtor may solicit acceptances of that plan and no other party in interest may file a competing plan.

17. Section 1121(d) of the Bankruptcy Code provides that the Court may, "for cause," extend these periods: "[o]n request of a party in interest . . . and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section." 11 U.S.C. § 1121(d)(1). However, the 120-day period "may not be extended beyond a date that is eighteen (18) months after the [date of the order for relief]" and the 180-day period "may not be extended beyond a date that is twenty (20) months after the [date of the order for relief]." 11 U.S.C. § 1121(d)(2).

18. Although the Bankruptcy Code does not define "cause," a number of courts have construed the term by examining the Bankruptcy Code's underlying legislative history and case law. See, e.g., In re Adelphia Commc'ns Corp., 352 B.R. 578, 586-87 (Bankr. S.D.N.Y. 2006); In re Hoffinger Indus., Inc., 292 B.R. 639, 643 (B.A.P. 8th Cir. 2003); In re Newark Airport/Hotel Ltd. P'ship, 156 B.R. 444, 451 (Bankr. D.N.J.), aff'd sub nom, FGH Realty Credit Corp. v. Newark Airport/Hotel Ltd. P'ship, 155 B.R. 93 (D.N.J. 1993). As discussed below, the legislative history of section 1121(d) and the applicable case law support the Debtor's requested extension of the Exclusive Periods.

19. In determining whether cause exists for an extension of a debtor's exclusive periods, courts have relied on a variety of factors, each of which may constitute sufficient grounds for extending the exclusive periods. These factors include, without limitation:

(a) the size and complexity of the debtor's case;

(b) the existence of good faith progress towards reorganization;

(c) the necessity for sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information;

(d) the fact that the debtor is paying its bills as they come due;

(e) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(f) whether the debtor has made progress in negotiations with its creditors;

(g) the amount of time which has elapsed in the case;

(h) a finding that the debtor is not seeking to extend exclusivity to pressure creditors to accede to the debtor's reorganization demands; and

(i) existence of an unresolved contingency.

See Adelphia, 352 B.R. at 587 (listing factors); accord In re McLean Indus., Inc., 87 B.R. 830, 834 (Bankr. S.D.N.Y. 1987) (identifying five of the nine factors listed above as relevant in determining whether "cause" exists to extend exclusivity periods to file and solicit acceptance of

a plan). Not all of these factors are relevant in every case, and a finding that any one of these factors exists may justify extending a debtor's exclusive periods. See In re Express One Int'l, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) (four factors relevant in determining whether cause exists to extend exclusivity); In re Interco, Inc., 137 B.R. 999, 1001 (Bankr. E.D. Mo. 1992) (four factors showed that bondholders' committee failed to show cause to terminate debtor's exclusivity); In re United Press Int'l, Inc., 60 B.R. 265, 269 (Bankr. D.C. 1986) (holding that the debtor showed "cause" to extend its exclusivity period based upon a showing of certain of the factors listed above). As discussed in detail below, the facts and circumstances of this Chapter 11 case satisfy the foregoing factors and demonstrate that more than sufficient cause exists to grant the Debtor's requested extensions of the Exclusive Periods.

### A.    The Debtor's Progress Warrants an Extension of the Exclusive Periods

20.    An extension of the Debtor's Exclusive Periods is justified by the Debtor's progress in resolving issues facing its estate and creditors. See, e.g., McLean Indus. Inc., 87 B.R. at 835. In the time since this case was commenced (involuntarily), the Debtor has made fundamental and important progress in formulating proposals for the resolution of holders of its unsecured debt (there are no perfected secured creditors) and resolving the claims asserted by the SEC. Since the Petition Date, the Debtor has (a) completed the filing of its schedules of assets and liabilities and statement of financial affairs; (b) negotiated and continues to negotiate with its creditors in good faith; (c) retained counsel, and a CRO is in the process of engaging a financial advisor; (d) settled the SEC Action; (e) made progress towards resolving pending securities litigation; (f) filed a motion to establish a claims bar date; (g) entered into the Protocol Agreement with the Abax Entities; (h) engaged E&Y China (subject to Court approval) to further its restructuring efforts; and (i) participated, in good faith, in the Working Group sessions to

coordinate solicitation and consummation of prospective investors or purchasers with the Debtor's principal alleged creditors.

21. To that end, the Debtor has been approached by or identified three potential parties interested in consummating a transaction. While each of these parties is at the non-disclosure or confidentiality agreement stage, with due diligence to follow, terminating exclusivity at a time when the Debtor is working with E&Y China and its principal creditors (through the Working Group, and directly, through counsel) to structure a potential transaction that maximizes the potential recovery to all stakeholders in the Debtor's estate, is not in the best interest of the Debtor's creditors or equity security holders.

22. In light of the Debtor's progress in the months since the commencement of this case and the first extension of exclusivity (that led to the Protocol Agreement and Working Group), a further extension of the Exclusive Periods is warranted. Such an extension will provide the Debtor and its professionals with the time needed to continue working with its constituents and complete the tasks necessary to develop, file and seek confirmation of a Chapter 11 Plan, including handling the added complexity of PRC law and the necessary negotiations with the Debtor's constituencies in the PRC.

B. **The Requested Extension of the Exclusive Periods Is Justified**

23. Both Congress and the courts have recognized that the size and complexity of a debtor's case alone may constitute cause for extension of a debtor's exclusive periods. "[I]f an unusually large company were to seek reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement." H.R. Rep. No. 95-595, at 231, 232, 406 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 6191, 6362. In In re Texaco Inc., for example, this Court stated: "The large size of the debtor and the consequent difficulty in formulating a plan . . . for a huge debtor with a complex

financial structure are important factors which generally constitute cause for extending the exclusivity periods." In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987).

24. The Debtor is a publicly traded company with a complex business structure, with interests in businesses in the PRC. The cross-border and complex nature of the Debtor's case poses a number of practical issues that, at this early stage, make formulation of a Chapter 11 Plan impracticable at this time. Therefore, the Debtor submits that an extension of the Exclusive Periods is justified.

C. **The Requested Extension of the Exclusive Periods Will Not Harm the Debtor's Creditors or Other Parties In Interest and Will Be Used for a Proper Purpose**

25. The Debtor further submits that the extension of the Exclusive Periods requested herein will not harm the Debtor's creditors or other parties in interest and will be used for a proper purpose — to develop and build consensus for a Chapter 11 Plan. The Debtor has maintained consistent and regular communications with its key constituencies during the pendency of this Chapter 11 case, and the Debtor believes that neither its creditors nor any other party in interest would be harmed by the requested extension of the Exclusive Periods. This request is not a negotiation tactic, but merely a reflection of the fact that this Chapter 11 case is not yet ripe for the formulation of a viable plan of reorganization. Accordingly, the relief requested herein will not result in a delay of the plan process; rather, it will simply permit the process to move forward in an orderly fashion.

D. **Important Contingencies Must Be Addressed and Resolved**

26. Courts also have relied on the need to resolve an important contingency as a justification for extending a debtor's exclusivity periods. See, e.g., McLean Indus., Inc., 87 B.R. at 834. Here, the Debtor continues to address a number of key issues, and continues to engage in discussions with its key constituencies regarding reorganization capital and the

composition of a Chapter 11 Plan. The Debtor is also actively seeking to resolve (consensually, and, if necessary, by dispositive motion) the pending securities class action and derivative claims. Only after the Debtor addresses these and other issues and has an opportunity to analyze the claims that will be filed in the case (an application to set the bar date is pending) will it be in a position to pursue confirmation of a Chapter 11 Plan.

E. **The Debtor Is Satisfying Its Postpetition Payment Obligations as They Come Due**

27. Courts considering an extension of exclusivity also may assess a debtor's liquidity and solvency. See McLean Indus., Inc., 87 B.R. at 834. The Debtor is satisfying its postpetition obligations as they become due.

28. For the reasons set forth above, the Debtor respectfully submits that ample cause exists under the Bankruptcy Code and the applicable case law for the requested extensions of the Exclusive Periods. Relief similar to the relief requested herein has been granted in this District. See, e.g., In re The Great Atl. & Pac. Tea Co., Inc., Case No. 10-24549 (RDD) (Bankr. S.D.N.Y. May 10, 2011); In re Gen. Growth Properties, Inc., Case No. 09-11977 (ALG) (Bankr. S.D.N.Y. July 28, 2009); In re Lyondell Chemical Co., Case No. 09-10023 (REG) (Bankr. S.D.N.Y. Apr. 30. 2009); In re Lehman Bros. Holdings Inc., Case No. 08-13555 (SHL) (Bankr. S.D.N.Y. Jan. 15, 2009); In re Ampex Corp., Case No. 08-11094 (AJG) (Bankr. S.D.N.Y. July 23, 2008); In re Dana Corp., Case No. 06-10354 (BRL) (Bankr. S.D.N.Y. Dec. 19, 2006).

29. The Debtor reserves the right to request further extensions of the Exclusive Periods pursuant to section 1121(d) of the Bankruptcy Code.

**Notice**

30. No trustee or examiner has been appointed in this Chapter 11 case. Notice of this Motion has been provided to: (a) the U.S. Trustee; (b) persons and entities listed on the

Debtor's Creditor Matrix; and (c) those persons who have formally appeared and requested service in this proceeding pursuant to Bankruptcy Rule 2002. The Debtor submits that no other or further notice need be provided.

WHEREFORE, the Debtor respectfully requests that the Court: (i) enter an Order substantially in the form attached hereto as Exhibit A, granting the relief requested herein; and (ii) grant such other and further relief to the Debtor as the Court may deem proper.

Dated: February 3, 2014
New York, New York

SCHIFF HARDIN LLP

By: /s/ Louis T. DeLucia
Louis T. DeLucia
Alyson M. Fiedler
666 Fifth Avenue, 17th Floor
New York, NY 10103
T: 212.753.5000 / F: 212.753.5044
Email: ldelucia@schiffhardin.com
afiedler@schiffhardin.com

*Counsel for the Debtor, China Natural Gas, Inc.*